UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN NIXON,

        Plaintiff,

v.                                 Case No. 6:20-cv-957-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

        Defendant.
_____

## OPINION AND ORDER[2]

### I.  Status

John Nixon ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of seizures, a dislocated right shoulder, anxiety, panic disorder, bipolar disorder, and schizoaffective disorder.  See Transcript of Administrative

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed November 9, 2020; Reference Order (Doc. No. 17), entered November 12, 2020.

Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed November 9, 2020, at 87, 106, 226. Plaintiff filed an application for SSI on August 27, 2018, alleging a disability onset date of December 31, 2008. Tr. at 205-10; see also Tr. at 87, 106 (listing protective filing date of application). The application was denied initially, Tr. at 85, 86-103, 126-29, and upon reconsideration, Tr. at 104, 105-23, 131-37.

On December 9, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 43-62. Plaintiff was forty-eight years old at the time of the hearing. Tr. at 47. On February 4, 2020, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision.[3] See Tr. at 22-38.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 4-5 (Appeals Council exhibit list and order), 14-17, 197-200 (representative memorandum (and duplicate)), 201 (letter to Appeals Council), 18, 202 (dire need request accompanying letter (and duplicate)). On April 2, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On

---

[3] The administrative transcript also contains a decision rendered by an ALJ on November 19, 2015 denying an earlier-filed July 17, 2013 SSI application. Tr. at 66-80. The parties make nothing of this decision, and because it was authored prior to the filing of the instant SSI application, it obviously did not adjudicate the application at issue here.

March 6, 2020, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ: 1) "did not sufficiently evaluate the opinion of Plaintiff's treating orthopedist, [Frank] Avilucea[, M.D.]"; and 2) failed to "adequately account for the episodic nature of Plaintiff's bipolar disorder" in assessing the residual functional capacity ("RFC"). Plaintiff's Memorandum of Law (Doc. No. 19; "Pl.'s Mem."), filed January 8, 2021, at 1; see Pl.'s Mem. at 10-13 (argument regarding issue one), 13-14 (argument regarding issue two). On March 12, 2021, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's arguments.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

(Continued...)

- 3 -

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 24-38. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since August 27, 2018, the application date."[5] Tr. at 24 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: fracture of the right proximal humerus, status post open reduction and internal fixation with repair of the tuberosities and tenodesis of the long head of the biceps; seizure disorder; bipolar disorder;

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[5] As the ALJ recognized, SSI "is not payable prior to the month following the month in which the application was filed." Tr. at 22 (citing 20 C.F.R. § 416.335).

- 4 -

anxiety disorder with panic attacks; alcohol, cocaine, hypnotic, nicotine, and sedative dependence." Tr. at 24 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 24 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 416.967(b). However, he could not climb ladders, ropes or scaffolds, but he could frequently climb ramps and stairs. He could frequently balance, stoop, kneel and crouch and he could occasionally crawl. There should be no work at unprotected heights and he cannot operate a motor vehicle. There can be occasional overhead work activity with the right upper extremity. There can be frequent pushing, pulling and reaching laterally with the right upper extremity. He can perform simple tasks and he can make simple work related decisions. He can have frequent interaction with supervisors and coworkers and occasional interaction with the general public.

Tr. at 27 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any past relevant work" as a "Mirror installer" and a "Glass installer." Tr. at 36 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("47 years old . . . on the date the application was filed"), education ("at least a high school education"), work experience, and RFC, Tr. at 36 (emphasis and citation omitted), the ALJ again relied on the VE's testimony and found that "there are

jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "Router," "Collator operator," and "Marker," Tr. at 37 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since August 27, 2018, the date the application was filed." Tr. at 38 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial

evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

As explained earlier, Plaintiff challenges first the ALJ's handling of Dr. Avilucea's opinion and second the ALJ's alleged failure to take into account the episodic nature of Plaintiff's bipolar disorder in assessing Plaintiff's RFC.   The challenges are addressed in turn.

### A.   Dr. Avilucea's Opinion

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed his claim after that date, the undersigned applies the revised rules and Regulations in effect at the time of the ALJ's Decision.

Under the new rules and Regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R.

- 7 -

§ 404.1520c(a).[6] The following factors are relevant in determining the weight to be given to a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).

When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ

---

[6] "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

Here, Dr. Avilucea filled out a Functional Capacity Questionnaire ("FCQ") on August 10, 2018, Tr. at 370, less than three months after Dr. Avilucea operated on Plaintiff's humeral fracture, Tr. at 357-58. He diagnosed a right humerus fracture and indicated Plaintiff should have a three-pound weight restriction and should "focus on range of motion." Tr. at 370. When asked whether Plaintiff could perform sedentary, light, or medium work (and provided the definitions for such work) or whether Plaintiff could perform no work at all, Dr. Avilucea checked that Plaintiff could not perform any. Tr. at 370. He stated Plaintiff would require accommodation for limited arm range of motion. Tr. at 370. He further indicated that Plaintiff would be limited with respect to "activities needing use of right arm . . . such as cleaning, eating, driving." Tr. at 370. When asked if the impairment would be expected to last at least twelve months, Dr. Avilucea checked no. Tr. at 370.

The ALJ discussed in detail Plaintiff's hospitalization and corresponding surgery by Dr. Avilucea. Tr. at 32. The ALJ also discussed the follow up care Plaintiff received, Tr. at 32-33, including an October 26, 2018 note authored by Dr. Avilucea (after the FCQ was filled out) indicating that Plaintiff's fracture had healed and the surgical hardware was stable, Tr. at 33; see Tr. at 430-32.

When it came time to weigh the various medical opinions, the ALJ specifically recognized Dr. Avilucea's FCQ indicating Plaintiff "was not able to work" and stating Plaintiff "had a 3-pound weight-bearing status and a limited range of motion and any activities needing the use of the right arm could be affected." Tr. at 35 (citation omitted). Although the ALJ did not explicitly analyze Dr. Avilucea's FCQ opinion, the ALJ did state that findings of other medical sources were "somewhat persuasive, as they are somewhat consistent with and supported by the medical evidence of record and [Plaintiff's] acknowledged activities." Tr. at 35. The ALJ assigned a "slightly more restrictive RFC" than the ones recommended by other medical sources, Tr. at 35, necessarily meaning she rejected Dr. Avilucea's opinion in the FCQ that Plaintiff could not perform any work.

Plaintiff contends the ALJ erred in failing to "state whether [Dr. Avilucea's] opinion was persuasive or unpersuasive" and in failing "to make any findings as to whether the doctor's opinion was backed by a sufficient supporting explanation or was consistent with the other medical evidence in the record." Pl.'s Mem. at 12 (citation omitted). Responding, Defendant argues the ALJ did not err because Dr. Avilucea rendered an opinion "on an issue reserved to the Commissioner"; i.e., the ultimate question of "whether a claimant is disabled." Def.'s Mem. at 13. According to Defendant, then, whether or not the ALJ properly analyzed Dr. Avilucea's opinion is of no

moment because the opinion would be properly rejected under the Administration's rules and Regulations. See id.

The undersigned disagrees with Defendant's contention that Dr. Avilucea's FCQ opinion solely concerns the ultimate disability question. Although Dr. Avilucea's FCQ opinion is not overly detailed (partly owing to the way the form is set up), it does address Plaintiff's ability to perform the physical demands of work activities (assigning a weight restriction, limited range of motion, and indicating a need for accommodation for use of the right arm). See 20 C.F.R. § 404.1513(a)(2). Thus, to the extent it addresses the physical demands of work activities, it is properly classified a "medical opinion," id., and is governed by the rules and Regulations for evaluating medical opinions. (And, even the question about Plaintiff's ability to perform work leaves open to interpretation whether Dr. Avilucea was opining on the ultimate disability question because of the form's definitions of all of the types of work in the context of asking the question about what type of work Plaintiff could perform: it could be said that by checking Plaintiff is "[u]nable to work at this time," Tr. at 370, Dr. Avilucea was indicating Plaintiff could not perform any of the physical functions required of the other types of work listed.)

Nevertheless, upon review of the ALJ's Decision, the undersigned does not find reversible error with respect to Dr. Avilucea's FCQ opinion. Although the ALJ did not explicitly discuss the particular opinion's supportability and

consistency as required by the Regulations, when read in context, it becomes evident the ALJ did not find the opinion supported by or consistent with the balance of the evidence. As noted, the ALJ did explicitly summarize the relevant records from Dr. Avilucea and his FCQ opinion. And, just after summarizing Dr. Avilucea's opinion, the ALJ discussed that other opinions were somewhat persuasive and supported by the medical evidence. The necessary implication is that the ALJ found Dr. Avilucea's opinion was not supported by or consistent with the medical evidence. And, this conclusion is bolstered by Dr. Avilucea's own observation in the FCQ that the condition was not expected to last at least twelve months, and his note rendered after the FCQ opinion was authored in which he found Plaintiff's fracture had healed and the surgical hardware was stable. The ALJ could have been more explicit, but she did not commit reversible error.

**B.   RFC and Episodic Nature of Bipolar Disorder**

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1); see Samuels, 959 F.3d at 1045 (citations omitted). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions

imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

The United States Court of Appeals for the Eleventh Circuit has recognized that "the episodic nature of" bipolar disorder must be considered by an ALJ. Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019). In Schink, the Eleventh Circuit found unsupported by substantial evidence an ALJ's step two determination that bipolar disorder was not severe in light of the "episodic nature of" the disorder and the evidence of record that showed the disorder had more than a minimal effect on the claimant's ability to work. Id. And, because the RFC assigned by the ALJ did not reflect any mental limitations, the Eleventh Circuit found that the ALJ "evidently failed" to consider the mental impairments, including bipolar disorder, at step four. Id. at 1269-70. The matter was reversed in part and remanded. Id. at 1270.

Later, in Samuels, the episodic nature of bipolar disorder again was at issue in the Eleventh Circuit. See Samuels, 959 F.3d at 1046-47. The ALJ there found bipolar disorder was severe at step two but then "nowhere indicated that medical evidence suggested [the claimant's] ability to work was affected by that impairment." Id. at 1047. "Nor did any of the hypothetical restrictions

- 13 -

implicitly account for [the claimant's] mental limitations as reflected in the record." Id. "In particular," stated the Eleventh Circuit, the ALJ failed to "account for unexcused absences or time spent off-task, which were limitations caused by [the claimant's] bipolar disorder that were reflected in the record." Id. Accordingly, the Court vacated and remanded the matter, directing the Commissioner to "account for the episodic nature of [the claimant's] bipolar disorder in determining her RFC and whether there are jobs in the national economy that [the claimant] can perform." Id.

Here, the ALJ found Plaintiff's bipolar disorder (and anxiety disorder) to be severe at step two. Tr. at 24. Later, the ALJ assigned an RFC that included mental limitations of "perform[ing] simple tasks"; "mak[ing] simple work related decisions"; having "frequent interaction with supervisors and coworkers"; and having "occasional interaction with the general public." Tr. at 27.

Plaintiff argues the ALJ erred in failing to consider the episodic nature of bipolar disorder and in electing not to include a restriction in the RFC for excused absences and time off task. See Pl.'s Mem. at 13-14. Responding, Defendant contends the ALJ appropriately considered the bipolar disorder and assessed an RFC that accounted for the limitations stemming from it. See Def.'s Mem. at 14-17.

The ALJ's Decision here differs from those in Schink and Samuels in that it reflects careful consideration of Plaintiff's bipolar disorder, acknowledges its episodic nature, and accounts for mental limitations in the RFC. See Schink, 935 F.3d at 1268; Samuels, 959 F.3d at 1046-47. After finding the disorder severe, the ALJ analyzed in detail the mental limitations that Plaintiff experiences. See Tr. at 25-27. The ALJ then discussed in equal detail the medical records relating to Plaintiff's bipolar disorder. Tr. at 30-34; see Tr. at 369-410 (records). The ALJ recognized that, at times, Plaintiff experienced significant symptoms. See Tr. at 30-34. Nevertheless, relying in large part on opinion evidence (that Plaintiff does not challenge), the ALJ found Plaintiff able to function mentally to the extent permitted by the assigned RFC. See Tr. at 35. The Decision surely reflects consideration of the episodic nature of Plaintiff's bipolar disorder, and the undersigned cannot say the ALJ's conclusions are unsupported by substantial evidence, especially in light of the ALJ's reliance on unchallenged opinions to support the findings.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 13, 2021.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record